156  479
163  621
156    479
92a  227

156    479
p95a  595

156    479
102a  475

156    479
d179  241

# FISHER .v. CENTRAL LEAD COMPANY, Appellant.

### Division One, May 26, 1900.

1. **Master and Servant:** SERVANT INJURED IN MINE: MASTER'S NEGLIGENCE: PLEADING. Where a servant operating a drill in a mine was struck by falling rock, sustaining injuries from which he died, in an action by his widow against the mine owner, his employer, for negligence in failing to maintain the roof of the mine in a reasonably safe condition, it is sufficient if the petition alleges that the defect complained of was known to the employer, without also alleging that such defect was unknown to the servant. (Overruling *dicta* in Epperson v. Postal Tel. Cable Co., 155 Mo. 346, and Thompson v. Railroad, 2 Mo. App. Rep. 633.)

2. **Practice:** DEMURRER TO EVIDENCE: DIFFERENT CONCLUSIONS. Where different conclusions may be drawn as to the effect of plaintiff's evidence, an instruction in the nature of a demurrer is properly refused.

3. **Evidence:** WIDOW SUING FOR DEATH OF HUSBAND: MINOR CHILDREN. A widow suing for the death of her husband may testify as to the number and ages of her minor children.

4. ———: CONDITION OF MINE: TESTIMONY IMPROPERLY EXCLUDED. Under the issues in this case it was error to exclude evidence offered by defendant to show the sufficiency of the pillars used to support the roof of the mine in controversy.

5. **Instructions.** A series of instructions for plaintiff disapproved, because not adapted to the issues.

Appeal from St. Francois Circuit Court.—*Hon. James .D. Fox*, Judge.

REVERSED AND REMANDED.

*Wm. Carter* and *Percy Werner* for appellant.

(1) The trial court committed error in permitting the plaintiff to testify with particularity, to the number or ages of her children. Railroad v. Roy, 102 W. S. 45; Chicago

v. O'Breenan, 65 Ill. 645; Railroad v. Binion, 107 Ala;
Railroad v. Towers, 74 Ill. 341; Galion v. Lawer, 55 Ohio
St. 392; Joliet v. Conway, 119 Ill. 489; Railroad v. Gower,
85 Term 465; 2 Sedgwick on Damages (8 Ed.), sec. 577;
Railroad v. Austin, 69 Ill. 426; Railroad v. Wildow, 52 Ill.
290; Kelley v. Railroad, 48 Fed. Rep. 663; Shaw v. Boston,.
8 Gray, 45; Railroad v. Finlay, 32 S. W. Rep. 51; Rail-
road v. Cowser, 57 Tex. 303; March v. Walker, 48 Tex.
375; Lierman v. Railroad (Wis.), 52 N. W. Rep. 91.  We
make this point with all due deference to the decisions of the
court in the cases of Haehl v. Railroad, 119 Mo. 325; Titheron
v. Railroad, 98 Mo. 74; O'Mellia v. Railroad, 115 Mo. 205.
Also the cases of Stephens v. Railroad, 96 Mo. 207; Dayharsh
v. Railroad, 103 Mo. 570; Mahaney v. Railroad, 108 Mo.
191; Williams v. Railroad, 123 Mo. 573.  (2)  The court
erred in excluding the testimony of competent witnesses of-
fered by defendant to the effect that there was left in said
mines a sufficient number of stone pillars to secure the work-
ing of the same and render said mines reasonably secure
for the safety of defendant's employees while working in
said mines.  Lawson on Expert and Opinion Evidence
(1 Ed), p. 2, rule 2, subrule same page, and pages 70
to 82; Benjamin v. Street Railway, 50 Mo. App. 609;
Boettger v. Iron Co., 124 Mo. 105; O'Mellia v. Railroad, 115
Mo. 221; Wray v. E. L. & W. P. Co., 68 Mo. App. 388;
Goins v. Railroad, 47 Mo. App. 182; Turner v. Haar, 114
Mo. 344.  (3)  The court erred in refusing to give defend-
ant's instruction in the nature of a demurrer to plaintiff's
evidence.  There was no testimony authorizing a recovery by
plaintiff.  Boemer v. Central Lead Co., 69 Mo. App. 601;
Fulger v. Bothe, 117 Mo. 500; Marshall v. Hay Press Co.,
69 Mo. App. 255; Steinhauser v. Spraul, 127 Mo. 563; Ep-
person v. Postal Tel. Cable Co., 50 S. W. Rep. 795; Halli-
burton v. Railroad, 58 Mo. App. 34; Moore v. St. Louis Wire
Mill Co., 55 Mo. App. 494; Ring v. Railroad, 112 Mo. 231;

Williams v. Railroad, 110 Mo. 323; Bradley v. Railroad, 138 Mo. 293; Railroad v. Mealer, Fed. Rep. 725; 44 L. R. A. 49, 50, note sub-head 1, and p. 79, sub-head c; Scheller v. Consolidated Coal Co., 42 Ill. App. 619.    (4)    The court erred in giving to the jury, at the request of plaintiff, instructions numbered 1, 2, 3, 4, 5 and 6.

*M. R. Smith* and *J. A. Abernathy* for respondent.

(1)    Respondent deems it unnecessary to reply to the proposition asserted in point 1, of appellant's brief, for the simple reason that this court has repeatedly ruled against it. Haehl v. Railroad, 119 Mo. 344; Tetherow v. Railroad, 98 Mo. 86; Soeder v. Railroad, 100 Mo. 686.    These cases hold that when the widow sues for damages for the death of her husband caused by defendant's negligence, she may show how many children deceased left by her, and their ages; but when the suit is prosecuted by the injured party, such party will not be permitted under the decisions of the court to testify as to the number of his children.    Williams v. Railroad, 123. Mo. 584; Railroad v. Roy, 102 U. S. 45; Soeder v. Railroad, *supra.*    (2)    Plaintiff's amended petition states facts sufficient to constitute a cause of action on demurrer thereto; more especially is it sufficient on objection to the introduction of evidence in support of it.    Hall v. Railroad, 74 Mo. 302; Young v. Shickle Iron Co., 103 Mo. 328; Crane v. Railroad, 87 Mo. 588; Williams v. Railroad, 109 Mo. 486; Johnson v. Railroad, 96 Mo. 346; Mack v. Railroad, 77 Mo. 232; Schneider v. Railroad, 75 Mo. 296; Bliss on Code Plead., sec. 211a; Railroad v. George, 94 Ala. 199; Magee v. Railroad, 78 Cal. 430; Johnston v. Railroad, 23 Ore. 94; Donahue v. Railroad, 32 S. C. 299; Richmond Granite Co. v. Railroad, 92 Va. 554; Cole v. Railroad, 67 Wis. 272, *contra;* Epperson v. Postal Co., 50 S. W. Rep. (Mo.) 803.    (3)

Under the record, defendant was not prejudiced by the action of the court in excluding the evidence complained of. Chouteau v. Iron Works, 94 Mo. 388; Spiva v. Mining Co., 88 Mo. 75; Goins v. Railroad, 47 Mo. App. 173; Benjamin v. Railroad, 133 Mo. 289; Thomas v. Steam Pump Co., 28 Mo. App. 567; 27 Am. and Eng. Ency. of Law, 733; Cook v. Railroad, 57 Mo. App. 480; Wright v. Brown, 68 Mo. App. 584; 1 Pat. Comp. Mo. Dig., p. 264, par. 3381. It would be a singular rule of pleading to require the plaintiff to allege that her husband did not have knowledge of the defective condition of the roof and supports of defendant's mines when she would not be required to prove such allegation in order to make out her case. R. S. 1889, sec. 2055; Green v. Cole, 127 Mo. 606; Crane v. Railroad, 87 Mo. 594; Alcorn v. Railroad, 108 Mo. 92; Fairgrieve v. Moberly, 29 Mo. App. 155. The assumption of risk must be pleaded as a defense. Epperson v. Postal Co., 50 S. W. Rep. 803; Alcorn v. Railroad, 108 Mo. 105; Mayes v. Railroad, 63 Iowa, 562; 13 Enc. of Pl. & Prac., 914, note (1).

BRACE, J.—This is an action by the plaintiff to recover damages for the death of her husband, William Fisher, in which she had judgment in the court below for $3,000, and the defendant appeals.

The deceased was an employee of the defendant, engaged in operating a drilling machine in defendant's lead mine in the county of St. Francois on the 7th day of November, 1896, when a fragment of the rock which constituted the roof of the mine in which he was working fell upon him inflicting injuries from which he died the next day. The plaintiff's cause of action as stated in the petition is as follows:

"Plaintiff states that she was many years ago married to William Fisher, deceased; that on the —— day of November, 1896, she was the wife of the said William Fisher, and the mother by him of five children, all of which are living, the

oldest of which is nine years past; that on said day, and prior thereto, he had been and was then employed in the service of said defendant company in one of the drifts or stopes of its said mines, located a short distance from the town of Flat River, county of St. Francois, State aforesaid, in the immediate vicinity of its reduction works; that he was at the time underground with another man operating a drilling machine, under the control, direction and supervision of one Jesse Smith, who, as plaintiff is informed, was a shift or underground boss of said defendant company. Plaintiff states that her husband, at the time of receiving the injuries hereinafter complained of, of which he died, was operating, as aforesaid, a drilling machine, and was at the time adjusting it in the manner and as was his custom preparatory to drilling with it in said mines; that while so engaged, a large sliver or scale of rock overhead broke loose and fell upon him, mortally injuring him upon and along the left side of his person, of which said injury so received, while at work in the line of his duty, under the negligent supervision of the said Jesse Smith, he died within a short time thereafter.

"Plaintiff states that defendant company had negligently failed to construct and maintain in a reasonably safe form, the roof of its said mines at the place where deceased was injured, as aforesaid, the same being composed of a shaley and seamy limestone rock through which water was continually trickling, liable to give way at any time, as was well known by defendant company, or might have been so known by it, by the exercise of reasonable care and prudence. And further states that defendant negligently failed to leave or construct the necessary pillars or supports sufficient in number and strength to hold up the aforesaid defective roof of said mines, so as to render the same reasonably safe, whereunder the employees of said defendant company were at the time working, including the deceased, when injured in the manner aforesaid. Plaintiff further states that said defendant negligently failed to have

the roofing of said mines carefully and properly inspected by a competent miner or inspector, in order that the defectiveness or natural impairment of said mines, wherein the deceased was working at the said time, might be discovered for the protection and safety of its employees.

"And now plaintiff states and charges that, in consequence of said alleged negligent acts, deeds and conduct in relation to the roof of the mines of defendant company, where the deceased was working on the —— day of November, 1896, when injured, and further, in consequence of the incompetency of the inspectors or miners, whose duty it was to inspect and test the roofing of said mines, with a view of keeping the same reasonably safe, as aforesaid, and the negligence of its vice-principal, Jesse Smith, the said deceased was injured, as aforesaid, of which injuries he died at the time aforesaid. Wherefore plaintiff says that by reason of the aforesaid alleged negligent conduct, acts and deeds of said defendant company, her said husband received the injuries aforesaid that resulted in his death, whereby she says she has suffered actual damage in the sum of five thousand dollars."

The answer of the defendant was a general denial, a plea of contributory negligence, and the assumption by the defendant of the risk of the injury—on which, issue was joined by reply. At the close of the plaintiff's evidence, the defendant interposed a demurrer thereto, which was overruled, and at the close of all the evidence the defendant renewed the demurrer by instruction, which was refused, and the case was submitted to the jury on instructions.

The errors complained of are the refusal of the court to sustain the demurrer to the evidence, the admission of incompetent evidence for the plaintiff, and the rejection of competent evidence for the defendant; the giving of improper instructions for the plaintiff, and refusing proper instructions for the defendant, and the refusal of the court to grant a new trial and arrest the judgment on proper motions filed in due time.

(1.) It is contended for the defendant that the court ought to have sustained the motion in arrest of judgment on the ground that the petition did not state facts sufficient to constitute a cause of action and in support of this contention Epperson v. Postal Telegraph Cable Co., 155 Mo. 346, and Thompson v. C., R. I. & P. R. R., 2 Mo. App. Rep. 633, are cited. In the former case it was said: "The action being that of a servant against his master for injuries received in consequence of defective machinery, premises, material or other instrumentalities provided for the prosecution of the work, the servant must allege and prove not only that the danger or defect was known to the defendant, but was unknown to plaintiff, and any statement of claim which does not include both of these allegations of fact, discloses no cause of action, and is consequently fatally defective." This language is quoted in the latter case, and upon it the ruling in that case is based, although the learned judge who wrote the opinion in the former case was careful to remark that this *dicta* was but the expression of his individual views and the same was not concurred in by a majority of the court. These cases can not be regarded as authority in support of this contention.

The fact that the plaintiff or the deceased, as the case may be, assumed the risk from which the injury resulted, like the fact of contributory negligence, is an affirmative defense, which need not be negatived in the petition. It has always been so regarded and treated in this State (Hall v. Mo. Pac. Ry. Co., 74 Mo. 298; Crane v. Mo. Pac. Ry. Co., 87 Mo. 588; Thorpe v. Mo. Pac. Ry. Co., 89 Mo. 650; Young v. Shickle Iron Co., 103 Mo. 325; Williams v. Mo. Pac. Ry. Co., 109 Mo. 475); and was so regarded and treated by counsel for defendant in this case, who specifically set up this defense in their answer, on which issue was joined by the reply. So that, even if the doctrine was as contended for, it could avail the defendant nothing, since the alleged defect in the petition was thus cured by aid of the answer.

[Garth v. Caldwell, 72 Mo. 622; Wagner v. Mo. Pac. Ry. Co., 97 Mo. 512; Donaldson v. County of Butler, 98 Mo. 163; Grace v. Nesbitt, 109 Mo. 9.] The petition is sufficient; and the crucial question in the case is, was there sufficient evidence to take the case to the jury?

(2.) The petition charges that the death of plaintiff's husband was caused by the defendant's negligence, and the negligence specified is:

First. The negligent supervision of Jesse Smith, the defendant's shift boss.

Second. The failure of defendant to construct and maintain the roof of its mine in a reasonably safe form at the place where deceased was injured.

Third. The failure of defendant to leave or construct necessary pillars or supports sufficient in number and strength to hold up the roof of the mine.

Fourth. The failure of defendant to have the roof carefully and properly inspected.

Fifth. The incompetency of defendant's inspectors appointed for that purpose.

The question in hand can best be determined by considering the evidence in connection with these allegations, in their order as near as may be.

It appears from the evidence that the employees of the defendant working in his mine, were divided into two shifts or crews, one the day shift going off work at 5 o'clock, and the other the night shift coming on at 7 o'clock in the evening. That with each shift there was a boss who had general supervision of the operations of the mine during his shift, and two inspectors, or miners, whose duty it was to test the roof, and take down any rock considered to be dangerous. That deceased was an experienced driller, and was in the defendant's employ as such when he was injured. That he belonged to the night shift of which Jesse Smith was the boss. Ben

Cummings and J. M. Hahn were the inspectors and Willis A. Roberts was the deceased's helper or back-hand.

Roberts testified that after going down and getting their oil, tools and lights, they went to the place where they were to do the drilling, selected the place where the drill was to be set up. Set up the column, raised and attached to it the drilling machine, and were engaged in pouring oil in the hose pipe above the valve, when the rock fell from the roof and struck him and deceased. That this was about one hour after they went down into the mine. It appears from the evidence that the deceased well knew the duties of his employment at the time and place of the injury, and how to discharge them, and there is not a particle of evidence tending to show any negligence upon the part of Jesse Smith the shift boss. The evidence tended to prove that the depth of the mine was about 400 feet, and the extent of the excavation about twenty-three acres. That the formation was limestone lying in stratas horizontal with the drifts. That the distances from the bottom to the roof of the drift in which deceased was working was seven or eight feet. That the roof was rock in position as left by excavation, resting on pillars of the same, left in like manner, in such number of such size, and at such distance from each other as the developments of the excavation in the course of its progress seemed to require, and there was no evidence tending to prove that there was any deficiency in the form or construction of the roof, or that it was supported by an insufficient number of pillars, or that these pillars were deficient in size or strength. This brings us to the 4th and 5th allegations of negligence which are somewhat blended and repeated in the petition.

It will be observed that it is not charged that the defendant failed to have the roof inspected, but that it failed to have "the roofing of said mine carefully and properly inspected, by a competent miner or inspector," in consequence whereof and of the other acts of negligence charged and the "incompetency

of the inspectors or miners" the deceased was injured—thus impliedly conceding the fact of inspection, concerning which Ben Cummings testified as follows: That he was mining in the Central Lead mines in November, 1896. "My duty was to take down the loose ground all through the mines that I could find to secure the roof. I suppose I had been working at that business at the Central mines about three months before Fisher got hurt. I have worked at different times, worked at Bonne Terre about nineteen years, worked in various capacities. The duties of the miner in the mines are to look over the bad ground and take it down, make it safe for the miners overhead. I was engaged as a miner at the Central Lead Co. on the 7th of November, 1896; the night Mr. Fisher got hurt. That shift went on duty at seven o'clock p. m. I went on duty at seven o'clock, took my tools and went out to the heading looking after loose ground. The heading is the front, the breast of the work, where machines are running. I went up to where Fisher was at work. I sounded his ground all the way from Berryman's machine into Fisher's machine, and still around to those other machines. I sounded around Fisher, right in the roof by Fisher's machine. I did it with a steel bar. 'How did it sound to me on that occasion?' Good tone; solid. I suppose I did this twenty minutes after seven o'clock. I saw Mr. Fisher when I was close to his machine. I asked him if he had any loose ground, or how his ground was. He said everything was safe; he said 'Do not bother me and break my pipe.' He had reference to his air pipe. I broke his pipe a shift or two before taking down ground behind him. I know Mr. Hahn; he was my partner. He was right behind me, close to the pillar between those machines, knocked a little scale off."

J. M. Hahn testified as follows: "In November, 1896, I was working in the Central Lead Company's mines as a miner; working in the roof. My duties as a miner was to examine the roof and take down anything that was dangerous.

I was on the same shift with Mr. Fisher. I saw Ben Cummings there the evening that Fisher was hurt; he was my partner. We had two miners to each shift. The duties of a miner is to go over the mine, examine the roof and take down all that is unsafe. The duties of the drill man is to go into the mines, and if the opposite shift has blasted where they are to work, it is for them to examine the roof, go ahead and set up their drill. On that evening I saw Ben Cummings in Mr. Fisher's drift or place. He went over to examine the roof. I saw him examine the roof. I was fifteen or twenty feet from him. I saw Mr. Fisher, Mr. Cummings and Mr. Roberts. I was working in the roof that evening, taking down loose ground." On cross-examination witness stated: "I had been working in the Central Lead Company's mines about fourteen months. When I saw Cummings that evening he was in the room or stope with Fisher and Roberts; he was near by them. They were working around their drill. I passed right by Roberts, also Fisher and near Cummings. This was ten or fifteen minutes before Fisher was injured. At that time Fisher did not have his machine up, they were fixing to set it up......I had got about two hundred feet away from where Fisher was when he got hurt. I discovered some loose ground about two hundred feet back from where Fisher was working. We were taking that down at the time of the accident. I inspected the roof within twelve or fifteen feet of where Fisher got hurt. Where I was it was all right, solid ground. Witness stated that one may examine the roof of a mine, find it all right, and in a few minutes afterwards go back and find the same rock drummy."

There was no substantial evidence tending to prove that either of these miners or inspectors were incompetent. That there was an inspection, and that the inspectors were competent was established beyond question, and the only allegation of the petition upon which further inquiry is required, is that the inspection was not "carefully and properly" made.

That the roof was in a dangerous condition at the point where the rock fell, at the time it fell is also beyond question, and that there was evidence from which the jury might have reasonably inferred that it was in a like dangerous condition at the time the inspection was made, and that such condition would have been disclosed by a careful and proper inspection at that time; which was but a few minutes before the rock fell; and in time to have prevented the injury, must also be conceded. But it is contended for the defendant that although this may be so, nevertheless this question should not have been submitted to the jury, for the reason that the deceased by the terms of his employment assumed the risk of the danger at the point where the rock fell, and it became his duty to make the inspection of the roof at that point which would have disclosed its dangerous condition, and this is the real bone of contention in the case.

It appears from the evidence that a proper inspection is made by striking the roof with some metal tool, its condition being disclosed by the sound produced. If it sounds "drummy," in the parlance of miners, the roof is in a dangerous condition. That the breast of the drift in which the drilling was to be done, on this occasion, was about 900 feet from the shaft. That the last duty of the drillers of the shift going off duty was to take down their machines and fire off their blasts. That the average depth of the space excavated in the breast of the drift by these blasts was four or five feet. That the excavation in the breast, thus made, is called a "stope," which may be defined to be "the excavation made in a mine to remove the ore which has been rendered accessible by the shaft and drifts." [Century Dic. & Ency.] That the duty of the defendant's miners or inspectors was to inspect the whole roof of the drifts. That the first duty of the driller, after going down the shaft, and getting his light and tools, is to repair to the "stope" at the head of the "drift," select a proper place there for the erection of his drill, inspect the

roof above such place, and if found safe, to erect his machine and proceed with the drilling. If found unsafe, to take the unsafe portion down, or report the condition to the inspector or shift boss, and wait until it is taken down. That in this instance the distance of the deceased's machine, thus by him erected, from the breast of the "stope" at the place he thus selected, was about two feet.

Now if the "drummy" condition, which the evidence tended to prove existed at the place where the rock fell, would have been disclosed by a proper inspection of the roof of the "stope" at the time when and at the place where the machine was set up, then the deceased may be said to have assumed the risk of that condition, otherwise not.

There was evidence tending to prove that the rock which fell and struck the deceased, and his helper Roberts, was from six to eight feet long, four feet wide, and six inches thick; that it was feather-edged. That it broke away from the roof lengthways, and commenced to break away some twelve or fifteen feet, and broke off about five or six feet from the drill. That when it fell deceased and Roberts were engaged in oiling the hose about 12 or 15 feet long that conducted the compressed air from the main pipe to the drill. That they were thus engaged, near the railroad in the drift, by which the ore and other material mined was removed to the shaft, and were distant about ten feet from the drill. That the rock in falling broke; some of the pieces falling on the track, and some of the pieces within five or six feet of the drill. That the "drummy" ground in the roof did not exist within five or six feet, but did exist within twelve or fifteen feet of the drill. Now if that "drummy" ground would have been disclosed by a careful and proper inspection, whose duty was it to make such an inspection? That it was the duty of the defendant's inspectors to do so, is evident from what has already been said, and for their failure to do so, the defendant is liable, unless that "drummy" ground would have been disclosed by a proper

inspection at the time the drill was set up, made within the limits of the roof, that deceased was also in duty bound to inspect in like manner, in which case the failure to discover the drummy ground was the result of the concurrent negligence of the deceased and the defendant's inspectors, and the plaintiff can not recover.    Whether the "drummy" ground would have been disclosed by a proper inspection within those limits at the time the drill was set up, was a question of fact for the jury, the burden of establishing which was on the plaintiff and as to which different conclusions might have been drawn from the evidence and the court did not err in overruling the demurrer to the evidence.

(3)    It is next contended that the court erred in permitting the plaintiff to testify to the number and ages of her minor children, the oldest of which was ten and the youngest two years old.    This point must be ruled against the defendant upon the authority of the following cases.    [Tetherow v. St. Joseph & Des Moines R. R. Co., 98 Mo. 74; Soreder v. St. Louis, I. M. & S. Ry. Co., 100 Mo. 673; O'Mellia v. Railway Co., 115 Mo. 205; Haehl v. Railroad Co., 119 Mo. 325.]    The other errors assigned on the rulings of the court upon the admission of evidence can best be treated in connection with the instructions.

(4)    For the plaintiff the court gave the following instructions, of which the defendant complains:

"1.    The court, on motion of plaintiff, instructs the jury that if they believe and find from the evidence that, on or about November 7th, 1896, the deceased, William Fisher, husband of plaintiff, was in the employment of defendant in its mine, and that while in the discharge of his duties he was, without carelessness or negligence on his part which contributed thereto, injured by reason of a large rock falling from the roof of said mines upon him, and that he thereafterwards on the next day of the injury so received died, and should further believe and find from the evidence that

the said roof of said mines was, at the time, where deceased was injured, as aforesaid, defective and unsafe, and that such defective and unsafe condition thereof was unknown to the deceased, and could not have been known by ordinary care and caution on his part, but was known to defendant, or might have been known by it by the exercise of reasonable caution and diligence on its part, then the jury will find for the plaintiff.

"2.   If the jury believe and find from the evidence that the roof of said mines as mentioned in the petition, was at the time deceased was injured in a defective and unsafe condition, on account of the character of rock composing it, or the want of the necessary pillars or supports to hold it up, and should further believe and find that the agents or servants, whose duty it was to inspect and maintain the roof of said mines knew, or by the exercise of reasonable care might have known, the condition thereof, then such knowledge was the knowledge of the defendant, and the neglect or failure to obtain such knowledge was the negligence or failure of defendant.    The jury are further instructed that it was the duty of the defendant to provide for the use of its employees a reasonably safe place for them to perform the duties of their employment and if the jury should believe and find that the defendant under all the circumstances negligently failed to furnish a reasonably safe roof for its mines, where the deceased received his injuries, and that the deceased was injured in consequence thereof, he being at the time in the exercise of reasonable caution and care under the circumstances, then your verdict should be for the plaintiff.

"3. ˘ The court further instructs the jury that if they believe and find from the evidence, that the defendant was operating a lead mine, and had the deceased employed therein at the time mentioned in these instructions, and that the work in said mines was unsafe and dangerous at the time, then it was the duty of the defendant to use every reasonable precau-

tion to secure the safety of its employees and if you should believe and find from the evidence that through the negligence of the defendant loose rock was permitted to remain in the roof of said mine, and that the deceased was working under said roof, not aware of the existence of such loose rock, and that while so working a rock fell therefrom upon the deceased, whereby he was injured, of which injuries so received, he died, and you further find that the defendant did not use reasonable precaution under all the circumstances to insure deceased from the injuries aforesaid, by the falling rock, then you should find the issues for the plaintiff, unless the danger was so patent and obvious that an ordinary observant man in the situation of the deceased would have observed it.

"4. You are further instructed that it was not incumbent upon deceased while in defendant's employment to search for latent or hidden defects in the roof of its mines, and unless by ordinary care and caution the defective and unsafe condition thereof could have been discovered by the deceased, he had a right to assume that the mines where he was working, including the roof thereof, was safe and sufficient for the purpose of his employment.

"5. You are instructed, although you may believe and find from the evidence that the deceased knew, or by the exercise of ordinary care might have known, that the roof of said mines was in a defective and unsafe condition, and under the same continued to work, yet if said roof of said mines, where deceased was at work, was not so dangerous as to threaten immediate injury to him at the time, and under the circumstances of the injury, or if he might have reasonably supposed that he could safely work by running his machine then and there, by the use of care and caution, he can not be said to have been guilty of such contributory negligence as to defeat a recovery by plaintiff, provided that in working at the time he exercised such care as a careful and prudent man of his calling would exercise under like circumstances."

The evidence offered for the defendant tending to show that the pillars or supports of the roof of the mine were sufficient in number and strength which was rejected was competent and should have been admitted on that issue. Its rejection, however, might not have wrought injury to the defendant's case, as the evidence as to the sufficiency of the supports was substantially all one way, but for the fact that in the second instruction the want of necessary pillars or supports is postulated as a ground of recovery. In this, the court certainly committed prejudicial error. The court also erred in admitting in evidence a conversation had between Smith and Fisher several days before the accident, which was irrelevant to the issues of the case, and calculated to prejudice the minds of the jurors.

The learned counsel for the defendant criticises each one of these instructions in detail, pointing out errors of which they complain—and sums up by saying "that taken altogether they are a tissue of errors and constitute a travesty on the law of this case."

We do not deem it necessary to follow the criticism of counsel through each of these instructions, but taking them altogether the paramount error we find in them is that they fail to instruct. The real issues of the case on the evidence we have already pointed out. These instructions were not adapted to those issues, nor calculated to assist the jury in arriving at a correct conclusion upon them. But on the contrary, by reason of their inapplicability to the facts in issue, each contained errors calculated to confuse and mislead the jury, and the same may be said of some of the instructions given for the defendant. The court did not err in refusing the three additional instructions asked for the defendant. This case furnishes an apt illustration of the futility of endeavoring to apply abstract propositions of law to a case they do not fit. For the errors noted, and to the end that a jury in another trial may be told, not what the law of the case is—it is

sufficient if the court understands that—but clearly what they must do, by way of a verdict, on the facts in the case really in issue, as they may find them, the judgment of the circuit court is reversed and the cause remanded for new trial.

All concur.