STAG CANON FUEL CO. v. ROSE.†

(Court of Civil Appeals of Texas. San Antonio. Feb. 28, 1912. Rehearing Denied March 27, 1912.)

1. MASTER AND SERVANT (§ 189*)—INJURY TO SERVANT — FELLOW SERVANTS — VICE PRINCIPAL.

A fire boss of a mine, who is charged with the duty of ascertaining the safety of each room in the mine and of informing each miner of the condition of his room, and who in the performance of such duty informs a miner that his room is in a safe working condition, represents the mineowner in the inspection, and his negligence is the negligence of the mineowner.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*]

2. MASTER AND SERVANT (§§ 118, 124*)—OBLIGATION OF MASTER—SAFE PLACE TO WORK.

The rule that a master must furnish a safe place to the servant in which to work is applicable to a mineowner employing miners, and the duty of inspection rests on him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 209, 235–242; Dec. Dig. §§ 118, 124.*]

3. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

In an action for injuries, to a coal miner engaged in the excavation of coal, caused by a rock falling from the roof, evidence held to justify a finding that the fire boss charged with the duty of inspection negligently inspected the working place of the miner.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972, 977; Dec. Dig. § 278.*]

4. MASTER AND SERVANT (§ 289*)—INJURY TO SERVANT — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

Whether the failure of an employé to examine the place in which he works, as required by the rules of the employment, is negligence on his part so as to preclude a recovery for injuries, is for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

5. MASTER AND SERVANT (§ 289*)—INJURY TO SERVANT — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

Whether a coal miner, injured by a rock falling from the roof of the room, was guilty of contributory negligence, held under the evidence for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

6. MASTER AND SERVANT (§§ 145, 235*)—REGULATION OF EMPLOYMENT — CONSTRUCTION OF RULES.

A rule of a coal mineowner that employés must use precautions to prevent accidents, that they shall not work in an unsafe place when timber will remedy the danger, that if timber is not on hand they must cease work and report to the mine foreman, and that the miner must each day examine his working place and take down dangerous rock, does not require a coal miner working in an excavation in a room to discover the condition of the roof to the extent of relieving the mineowner from the duty of providing a safe working place; no tools for the examination of the roof being furnished him, and the fire boss having such tools informing the miner that the place was safe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 288, 710–722; Dec. Dig. §§ 145, 235.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by B. F. Rose against the Stag Canon Fuel Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Hawkins & Franklin, for appellant. John T. Hill, for appellee.

FLY, J. This is a suit instituted by appellee for damages arising from personal injuries inflicted by a rock falling from a room or excavated place in a coal mine, at or near Dawson, N. M., while appellee was at work in the room. Appellee alleged that he was injured through the negligence of appellant, in failing to properly inspect the room in which he was working and in failing to give him a safe place in which to labor, and, in connection with those two acts of negligence, a violation of its own rules was charged against appellant. Appellant answered by a general denial and pleas of contributory negligence, assumed risk, that the injuries were inflicted by those who, under the laws of New Mexico, were fellow servants of appellee, for whose acts or omissions appellant was not liable, and that it was the duty, un-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

der appellant's rules, for appellee each day to examine his working place, and take down all dangerous rock or make it safe by propping, and that his injuries resulted from a failure to comply with the rules. The cause was tried by jury and resulted in a verdict and judgment in favor of appellee for $4,500.

The first assignment assails the action of the court in refusing to instruct a verdict for appellant and involves a consideration of the evidence and the law as applicable thereto. Appellee had been working for appellant about six months, and was working alone in an excavation in the coal mine, known as a "room." He entered the mine about 6:30 a. m., after being informed at the mouth of the mine by an employé, who was known as the "fire boss," that his room was all right, and in 20 minutes thereafter appellee was in his room, where he inspected the room for the date that the fire boss was required to make, and he looked over the roof. That he proceeded to put up timbers or props to hold the roof, and that, while trying to put up a post, a rock fell from the roof and injured appellee. Appellee asked the fire boss as to the condition of the room in which the former worked and was told it was all right. Appellee testified that the fire boss had full supervision of the whole business in the mine. He instructed the miners about anything that was to be done in the rooms. He told appellee that the room was perfectly safe and that he need not crossbar it. He testified: "On the morning I was hurt I found the mark of the fire boss which indicated that he had been there and inspected the room."

The following rules were introduced in evidence:

"Fire Boss. Rule 9. The fire boss shall make, before any person is allowed to enter the mine, a careful inspection with a safety lamp of every working place in the mine, marking the day of the month on the face of the coal in each working place where it can be readily seen. If dangerous gases are found in any working place, he will mark on a cap piece or shovel two large crosses with the day of the month between them thus, x27x, and will place these marks so that it will be impossible for any one to pass them without seeing them. If a quantity of gas is found, which, in the opinion of the fire boss, would endanger the operation of the mine, he is authorized to close the entire mine or any part of it he thinks endangered. The fire boss must always be on the safe side. The fire boss must not allow gas to be moved where men are working in the return air from it. After complete examination of the mine has been made, the fire boss shall come out of the mine and make a report in Report Book of all dangerous conditions found, which report must be read by the mine foreman before any men are allowed to enter the mine. The fire boss shall remain at mouth of mine, or some convenient place, until all the men have entered the mine, instructing each man as to the conditions of his working place. The fire boss must make an inspection at least once a week of all old or abandoned parts of the mine and report conditions of same in Report Book."

"General Rules. Rule 1. It shall be the duty of each and every employé of this company to inform himself in reference to his duties under the mining laws of this territory and to comply strictly therewith."

"Mine Foreman. Rule 11. They shall visit each working place at least once every week and direct the miners and all other employés in their work, and see that his instructions are complied with. They shall direct the miners to securely prop their working places and see that break throughs are driven at proper distances. They shall see that the ventilation of the mine is kept in good condition, and that all dangerous conditions are removed as soon as possible. They shall have absolute authority over all underground employés and see that all the rules and regulations are carefully carried out."

"Duties of Miners and Other Employés. Rule 12. All employés shall use every precaution to prevent accidents in or about the mine, they shall not work in an unsafe place when timber would remedy the danger. If timber is not at hand, they must stop work and report the fact to the mine foreman. The miner shall each day, before beginning work, examine his working place and take down all dangerous rock, or otherwise make it safe by properly timbering, and shall carefully sprag the coal when undermining."

The fire boss, Stafford, testified: "I was in that room on the morning of August the 3d, the day Mr. Ross received the injuries, between the hours of 3 and 4 in the morning. I examined that room as a part of my duty in the morning, and found the roof in good condition. We inspect the roof by tapping on it with a stick that has an iron head on it. * * * When we find it is perfectly safe from any explosive or inflammable or dangerous gases, then we examine the roof thoroughly with the stick made for that purpose with an iron head; we go to work testing the roof from one side to the other." The rock fell, however, and seriously and permanently injured appellee, so that his left hand was amputated and his back seriously injured. We conclude the inspection was negligently made.

[1] The first proposition under the first assignment is based on the false premise, as to both facts and law, that the exclusive possession of the room in which he worked was given to appellee, and that he had agreed to examine it every morning and make the roof safe by proper timbering, and that appellant owed him no further duty, except to advise him of any dangerous condition or loose rock of which appellant or its servants had actual knowledge. Under the facts in this case, the fire boss was the daily inspec-

tor of the mine, whose duty it was to ascertain the safety of each room, not only as to gas but also as to the condition of the roofs and otherwise, and to inform each miner of the condition of his room, and in performance of that duty, in this instance, the fire boss did inform appellee that his room was in safe working condition. The fire boss represented the company in the performance of the duties of inspection, and his negligence in that respect would be the negligence of the company. Cerrillos Coal Co. v. Deserant, 9 N. M. 49, 49 Pac. 807.

[2] The requirement that the master shall furnish a safe place to the servant in which to perform his work is applicable to the mine owner as well as to any other master, and the duties of inspection rest upon him with the same force, and if the inspector appointed by him fails to properly inspect the place of work of the miner, and he is injured by reason of such failure, the owner must respond in damages. McKenzie v. North Coast Colliery Co., 55 Wash. 495, 104 Pac. 801, 28 L. R. A. (N. S.) 1244; Hill v. Nelson Coal Co., 40 Mont. 1, 104 Pac. 876; Bradley v. Railway, 62 N. Y. 99; O'Brien v. Corra-Rock Island Mining Co., 40 Mont. 212, 105 Pac. 724: Gowen v. Bush, 76 Fed. 349, 22 C. C. A. 196.

[3] The duty of inspection rested upon appellant, and having delegated that duty to the fire boss, appellant was liable for any injuries arising to its employés through the negligence of its vice principal. The fire boss was directly representing the master, and his negligence was that of the master and not of a fellow servant of the miners. Appellee was injured in New Mexico, and the Supreme Court of that territory held, in the case of Coal Co. v. Deserant, herein cited, a case similar to this: "The fire boss was an employé whose duty it was to inspect the working places, and inform miners, like deceased, who work by contract, i. e., were paid according to the quantity of coal mined, of the condition as to safety of their working places; and he told, or, as he expressed it, he must have told, the deceased that his working place was safe when he went to work at 7 o'clock on the morning of the explosion. As to his duty the fire boss must be considered, we think, beyond question, as representing defendant." There was evidence tending to show that, if the fire boss had performed his duty in a thorough manner, the stone would not have fallen from the roof. Lamph, the mine boss, testified: "I had sooner take down small rock like this one than prop it. To ascertain loose rock in roof, the fire boss has what we call a hammer and walking stick; and when the rock is loose you get a hollow sound always. I have never seen it fail, and you can hold your hand against the rock and tap it and tell whether it is loose. It is not a hard thing to do to find out a loose rock at all." That evidence tended to show negligence on the part of the fire boss in failing to ascertain if the rock was loose and in giving appellee assurances that the room was safe. There was other testimony to prove negligence on the part of the fire boss.

[4] It is, however, the contention of appellant that, by the provisions of rule 12 promulgated by it, it was the duty of every employé, appellee among the number, to use every precaution to prevent accidents, and that they should not work in an unsafe place when timber would remedy the danger, and if there was no timber at hand they should cease work and report the matter to the mine foreman, and that before beginning work the miner should examine his working place and remove dangerous rocks or make it safe by timbering, and the duty of inspection devolved on appellee, and he could not recover by reason of the rock falling. It is the rule in some states that when the duty of inspection is cast on a servant by express contract, or by general rules, or by special orders, of which the servant has notice, a breach of the duty assumed by the servant will be a bar to a recovery. The rule in Texas, however, as well as in some other states, is that it is for a jury to say whether the failure of the servant to examine the place in which he works is negligence or not. Railway v. Nicholson, 57 S. W. 693; Bookrum v. Railway, 57 S. W. 919; Railway v. Lee, 70 Tex. 496, 7 S. W. 857; Hogan v. Railway, 88 Tex. 679, 32 S. W. 1035; Railway v. Adams, 94 Tex. 100, 58 S. W. 831; Railway v. Sweeney, 14 Tex. Civ. App. 216, 36 S. W. 800; Knupfle v. Knickerbocker Ice Co., 84 N. Y. 488; Fisher v. Central Lead Co., 156 Mo. 479, 56 S. W. 1107.

In the case cited of Railway v. Adams, the Supreme Court of Texas held: "The plaintiff in error presents, in different forms, the proposition that a servant who, in discharging his duties, disobeys the regulations of his master, is guilty of negligence per se, and if injured, and the act which violates such rules contributes to the injury, no recovery can be had. This rule would give to regulations of the master the force of statutory enactments. We do not understand the law to be consistent with that contention. If a violation of a rule shows conclusively that the servant cannot recover under the facts of the case, the question of contributory negligence becomes a question of law to be decided by the court. If, however, under the facts of the particular case, there might be a phase in which the servant would be justified or excused in disregarding the rule of the company, then it becomes a question for the jury to determine whether such act is negligence; that is, whether, under all the circumstances, a reasonably prudent person would have done as the plaintiff in the case did."

The case of Fisher v. Central Lead Co., herein cited, was a mining case, and the Supreme Court of Missouri held, in regard to inspection of a roof, which the deceased employé was in duty bound to inspect, as well

as the inspectors of the company, that it is a question for the jury whether a proper inspection by deceased within the limits of the roof he was bound to inspect would have disclosed its dangerous condition so that a failure to discover it would be contributory negligence.

[5] The evidence in this case shows that appellee fulfilled every duty devolved upon him by the rule of appellant, as well as by the rules of prudence and care, and that he was endeavoring to place a timber so as to prevent danger, when the rock fell; in fact, he was using all means in his power to meet the requirements of appellant's rule 12, herein cited. The matter was fully submitted to the jury, and they found, under the facts, that appellee was not guilty of contributory negligence. He had been assured of the safety of the working place, by one who is denominated the representative of the mining company by the Supreme Court of New Mexico, which is the lex loci actus. Acting upon the representations of the mouthpiece of the company, he might have omitted any inspection, but out of abundant caution, which the aftermath fully justified, he was endeavoring to place timbers as required by appellant's rule when the rock fell and injured him. There is nothing in the record which indicates the manner of the inspection made on the morning of the accident by the fire boss; but it was shown that, if he had followed the ordinary method, with which appellee was acquainted, loose stones would have been detected and the injury averted.

[6] Neither rule 12, nor any other duty placed on appellee, required of him any more than he performed on the day of the accident, and the court did not err in instructing the jury that it was not the duty of appellee to discover the condition of the roof to the extent that appellant would be relieved from its duty in connection therewith. No tools for the examination of the roof were placed in the hands of appellee; the only employé who had such tool being the fire boss, who had told him the place was safe. The evidence tends to show that appellee did not have in his possession the only means for examining a roof, which was by tapping with a stick tipped with iron. He used all the means at hand to prevent the disaster, and appellant contends that he should not recover because he did not put perfect reliance in the word of the fire boss and put forth no effort for his safety. The evidence showed that the efforts made by appellee to protect himself had no connection with the precipitation of the stone.

The court did not err in refusing the special charges Nos. 4 and 6 requested by appellant, which were not justified by the facts or the law. They were directly upon the weight of the evidence.

A full consideration of the facts and the law applicable thereto has convinced this court that there is no error in the judgment, and it will therefore be affirmed.