MITCHELL, APPELLANT, *v.* BOSTON AND MONTANA CON-
SOLIDATED COPPER AND SILVER MINING CO., RE-
SPONDENT.

(No. 2,570.)

(Submitted October 13, 1908.   Decided November 12, 1908.)

[97 Pac. 1033.]

*Personal Injuries—Master and Servant—Minor Employees—*
*Dangerous Machinery—Warning—Failure to Make Rules—*
*Conflicting Orders—Jury—Special Findings—General Ver-*
*dict—Instructions—Harmless Error.*

Personal Injuries—Master and Servant—Issues—Special Interrogatories—
Submission to Jury—Harmless Error.
  1.  Where an action by a minor employee to recover for injuries
  sustained while running an electric motor engine through a tunnel
  used in connection with a smelter was tried on the theory that the
  inquiry whether certain general officers had instructed him not to
  run the motor was material, its submission in a special interrogatory
  to the jury, though error because not within the issues, was not
  prejudicial to plaintiff, since he also had the privilege of asking the
  submission of the special question whether a foreman had ordered
  him to run the engine.

Same—Issues—Special Interrogatories—Submission to Jury.
  2.  The submission to the jury, in the form of special interrogatories,
  of the only issue in the case, to-wit, whether there was suffi-
  cient light in and about the vicinity of the tunnel to enable the
  plaintiff to see the train with which his engine collided, was not er-
  ror.

Same—Master and Servant—Minor Employees—Dangerous Machinery—
Warnings—When Unnecessary.
  3.  Where a minor employee, of about eighteen years of age, knew
  all about the running of an electric motor engine, and the injuries
  he received from a collision were not traceable to any patent or latent
  defects in it, negligence could not be predicated upon the master's
  failure to give him instructions or warnings in relation to the run-
  ning of the engine.

Same—Master and Servant—Change of Employee's Occupation—Not Neg-
ligence *per se.*
  4.  It was not negligence *per se* for the officers of the defendant
  smelter company to change the occupation of plaintiff employee from
  that of wheeler or car-chaser to that of motorman; hence the allega-
  tion of plaintiff's complaint that the defendant was negligent in
  making such change should have been supplemented by testimony
  showing a necessity for additional instructions relative to the new
  employment.

Same—Master and Servant—Failure to Make Rules.
  5.  Where plaintiff failed to introduce testimony as to what rules
  should have been promulgated by defendant company so as to avoid

the collision by reason of which he was hurt, and where, on the contrary, it appeared that rules were unnecessary, he could not rely for recovery on an allegation of negligence in that regard.

Same—Master and Servant—Conflicting Orders—Erroneous Instruction.
    6.  An instruction to the effect that plaintiff could not recover if the general officers of the defendant company had instructed him not to run the electric motor, even though his foreman had ordered him to do so on the day of the accident, was erroneous, especially where one of such general officers and the foreman testified that if the latter had ordered plaintiff to run the engine it was his duty to obey.

Same—Withdrawal of Evidence from Jury—When Error.
    7.  While, as shown by plaintiff's own testimony, an alleged defective construction and damaged condition of the motor cab had not contributed to his injuries, and the court should have withdrawn from the consideration of the jury the allegation that such defective cab was, independently, a proximate cause of the injuries, it was error to charge the jury to wholly disregard all the evidence given with reference thereto. The jury had a right to take into consideration all the facts and circumstances attending the accident, including the manner of construction of the cab and alleged defects in it, if any, in determining how the accident occurred and the responsibility therefor.

Same—Instructions—Withdrawal of Evidence from Jury—When Harmless Error.
    8.  An erroneous instruction taking from the consideration of the jury certain evidence which they had a right to consider in arriving at their verdict in a personal injury action, was harmless, where from other paragraphs of the charge they must have understood that they should consider such evidence.

Jury—Special Findings—Effect on General Verdict.
    9.  The special findings of a jury control a general verdict.    (Rev. Codes, sec. 6758.)

Personal Injuries—Master and Servant—Instructions—Harmless Error.
    10.  Where the plaintiff was defeated on the only material issue, to-wit, whether defendant company negligently omitted to provide sufficient light in a tunnel in running through which he was injured, refusal to instruct the jury that if plaintiff's foreman knew that plaintiff, a minor, was about to make a trip as motorman and consented thereto, defendant's liability in keeping the place safe was the same as if the foreman had ordered him to run the motor, was not prejudicial error.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by Stephen Mitchell, by William Mitchell, his guardian *ad litem,* against the Boston and Montana Consolidated Copper and Silver Mining Company. From a judgment for defendant, and an order denying a new trial, plaintiff appeals. Affirmed.

*Mr. A. C. Gormley,* for Appellant.

None of the six interrogatories submitted to the jury are such as come within the purview of section 1101 of the Code of Civil Procedure. The propriety of submitting special interrogatories in a case of this character is doubtful; but in any event the special findings should be upon the ultimate facts upon which the liability or nonliability of the defendant could be based, and not upon questions of evidence merely. (*Plyer* v. *Pacific Portland Cement Co.* (Cal. App.), 87 Pac. 395; *City of Lawton* v. *McAdams,* 15 Okl. 412, 83 Pac. 429; 8 Current Law, 2245-2247; 2 Labatt, sec. 867.)

The evidence conclusively shows that the plaintiff was of immature years, and lacked the experience, judgment and capacity to run the electric motor as he was ordered and directed to do by defendant's general foreman, and was entitled to recover. (*Union Pacific Ry. Co.* v. *Fort,* 17 Wall. 553, 21 L. Ed. 739; *Chicago etc. Ry. Co.* v. *Bayfield,* 37 Mich. 205; *Turner* v. *Goldsboro Lumber Co.,* 119 N. C. 387, 26 S. E. 23; *Camp* v. *Hall,* 39 Fla. 535, 22 South. 792; *Foley* v. *California Horseshoe Co.,* 115 Cal. 184, 56 Am. St. Rep. 87, 47 Pac. 42.)

The evidence further shows that running a motor was outside of plaintiff's regular duties, and that defendant neglected to give him any instructions, caution or warning, and was therefore entitled to recover. (*Hayes* v. *Colchester Mills,* 69 Vt. 1, 60 Am. St. Rep. 915, 37 Atl. 269; *Cincinnati etc. Ry. Co.* v. *Madden,* 134 Ind. 462, 34 N. E. 227; *Lake Shore etc. Ry. Co.* v. *Stupak,* 123 Ind. 216, 23 N. E. 246; *Egan* v. *Sawyer etc. Lumber Co.,* 94 Wis. 137, 68 N. W. 756; *Orman* v. *Mannix,* 17 Colo. 564, 31 Am. St. Rep. 340, 30 Pac. 1037, 17 L. R. A. 602; *Daubert* v. *Western Meat Co.,* 135 Cal. 144, 67 Pac. 133; *Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42; *Stephens* v. *Elliott,* 36 Mont. 92, 92 Pac. 45.)

Defendant neglected to provide lights so as to enable plaintiff to see on the night in question and thereby avoid injury. On this phase of the case, regardless of the other issues plaintiff

was entitled to recover. (*Nord* v. *Boston & M. C. & S. M. Co.*, 30 Mont. 48, 75 Pac. 681; *Doyle* v. *Eschen*, 5 Cal. App. 55, 89 Pac. 836; *Harrison* v. *Denver & R. G. W. Ry. Co.*, 7 Utah, 523, 27 Pac. 729.)

The evidence conclusively shows negligence on the part of the defendant in failing to make rules for the running of trains so as to avoid collisions. (1 Labatt, secs. 210-217; 6 Thompson on Negligence, sec. 7536; *Wagner* v. *City of Portland*, 40 Or. 389, 60 Pac. 985, 67 Pac. 305.)

The employer is liable for the negligent orders of a vice-principal or foreman. (26 Cyc. 1163; 1 Labatt on Master and Servant, secs. 433-444; Mechem on Agency, secs. 76, 77; *Union Pacific L. R.* v. *Fort, supra; Hardesty* v. *Largey Lum. Co.*, 34 Mont. 158, 86 Pac. 29; *Camp* v. *Hall*, 39 Fla. 535, 22 South. 792; *Orman* v. *Mannix*, 17 Colo. 564, 31 Am. St. Rep. 340, 30 Pac. 1037, 17 L. R. A. 602; *Hayes* v. *Colchester Mills*, 69 Vt. 1, 60 Am. St. Rep. 915, 37 Atl. 269; *Foley* v. *California Horseshoe Co.*, 115 Cal. 184, 56 Am. St. Rep. 87, 47 Pac. 42; Session Laws 1903, p. 157.)

*Mr. Ransom Cooper, Mr. Sam Stephenson,* and *Mr. W. G. Downing,* for Respondent.

Where the minor is familiar with the machine, and its character and operation are obvious, and he is aware of and fully appreciates the danger to be apprehended from working the machine, the fact that he is a minor does not alter the general rule that the employee takes upon himself the risks which are patent and incident to the employment. (*Buckley* v. *Gutta Percha and Rubber Mfg. Co.*, 113 N. Y. 540, 21 N. E. 718; *Hickey* v. *Taaffe,* 105 N. Y. 26, 12 N. E. 287.) So in the case of a minor who has been instructed as to the dangers incident to his employment; all ordinary and obvious risks are assumed by him. (*Groth* v. *Thomann,* 110 Wis. 488, 86 N. W. 180; *Jones* v. *Roberts,* 57 Ill. App. 56; *Fones* v. *Phillips*, 39 Ark. 17, 43 Am. Rep. 264; *Pratt* v. *Prouty,* 153 Mass. 333, 26 N. E. 1002; *Tinkham* v.

*Sawyer*, 153 Mass. 485, 27 N. E. 6; *Gardner* v. *Cohannet Mills*, 165 Mass. 507, 43 N. E. 294; *Greenwald* v. *Marquette H. & O. R. R. Co.*, 49 Mich. 117, 13 N. W. 513; *Ludwig* v. *Pillsbury*, 35 Minn. 256, 28 N. W. 505.)

Plaintiff failed to point out any particular rule or regulation that could have been made to prevent the collision, or to introduce evidence upon the subject to show that any rule or rules had ever been adopted elsewhere successfully, and hence a case had not been made upon which to put the question of negligence of the defendant for failure to adopt and promulgate rules to the jury. (*Shaw* v. *New Year Gold Mines Co.*, 31 Mont. 153, 77 Pac. 515; *Johnson* v. *Portland Stone Co.*, 40 Or. 436, 67 Pac. 1013, 68 Pac. 425; *Berrigan* v. *New York etc. Ry. Co.*, 131 N. Y. 582, 30 N. E. 58; *Atchison etc. Ry. Co.* v. *Carruthers*, 56 Kan. 309, 43 Pac. 232; *Whalen* v. *Michigan C. R. Co.*, 114 Mich. 512, 72 N. W. 326; *Morgan* v. *Hudson River etc. Co.*, 133 N. Y. 666, 31 N. E. 235; *Texas etc. Ry. Co.* v. *Echols*, 87 Tex. 339, 27 S. W. 61, 28 Pac. 517.)

Referring to the allegation that defendant was guilty of negligence for failing to provide sufficient lights about the track; the defendant had discharged its legal obligation when it provided an arc light which was burning; also plenty of places for incandescent lamps, a large number of which were burning, a supply of lamps for the men to use to replace the ones that were burned out or broken, and an experienced electrician who was subject to the call of all of the employees to repair any lights that were out of repair. To hold the defendant to a greater degree of care would be to make it an absolute insurer of plaintiff's safety. (*Quibell* v. *Union Pac. Ry. Co.*, 7 Utah, 122, 25 Pac. 737; *Kelly* v. *Calumet Woolen Co.*, 177 Mass. 128, 58 N. E. 183; *Carrigan* v. *Washburn etc. Mfg. Co.*, 170 Mass. 79, 48 N. E. 1079.)

MR. JUSTICE SMITH delivered the opinion of the court.

On the night of October 14, 1906, plaintiff was operating an electric motor attached to a train of ten cars in the smelter of

.the defendant company at Great Falls, and ran the same into another train of cars; receiving serious injuries as the result of .the collision. At the time of the accident, plaintiff was between eighteen and nineteen years of age, and had worked in the smelter and about the motors for some three years. The tes-.timony, including his own, shows that he knew how to run a motor, and had had more or less experience in handling one in the smelter. He alleges in his complaint that at the time of the accident he was in the employ of the defendant "as a laborer ·and servant; the duties of his employment requiring him to 'chase' cars and assist in loading and unloading said cars." He further alleges: That he was ordered by one Krejci, the general foreman of the smelter, to run a motor on the night in question. That he made one trip, and was injured on the second: (1) By reason of the negligence of the defendant in requiring him to perform a hazardous act, requiring judgment, skill and experience, and outside of the line of his employment, ⁻which was nonhazardous. "That the defendant and its superin-⁺tendent and foreman, including Krejci, knew, and had reason to know, that the plaintiff was of immature years, and did not have the experience and judgment necessary for the perform-ance of the service so required of him." (2) By reason of de-fendant's failure to provide sufficient or adequate lights, "said place being at that time so dark that plaintiff was unable to see the other train." (3) By reason of a defective cab "which had been so badly damaged before that it afforded no protection to plaintiff. That plaintiff while riding backward with his hands on the controller and reverse lever was unable to sit in a proper position so as to watch out for the train. There was also too little room in the cab to enable plaintiff to move or in any wise save himself in sudden danger." (4) By reason of a failure on the part of the defendant to make "some rule or regulation and giving notice thereof to their employees so as to prevent any collision between trains such as happened on said night, and which defendant and its said foreman should have anticipated if they had exercised reasonable care; and also (5) in not giving

plaintiff any caution and instruction with reference to the said work he was ordered to do, so as to enable him to understand the dangers he would encounter and how to do the work with safety, the defendant and its said foreman then and there well knowing, as the fact was, that this was a temporary work, of a peculiarly dangerous character, and that the risks and hazards of the work and the proper mode of doing the same were not obvious or known and appreciated by plaintiff by reason of his youth, incapacity and inexperience.''

As a result of the trial the jury returned the following special and general verdicts:

''(1) Did A. T. Elliott, defendant's general smelter foreman, before plaintiff's injury, instruct plaintiff that he was never to run the blast furnace motors after that time?   A.   Yes.

''(2) Did F. W. Snow, the assistant superintendent, before the plaintiff's injury, order and instruct the plaintiff that he was thereafter to keep off the blast furnace motors?   A.   Yes.

''(3) Did Mr. Henry Seidler on or before the fourteenth day of August, 1906, instruct the plaintiff that the general smelter foreman, Elliott, had issued orders requiring the plaintiff to keep off of the blast furnace motors thereafter?   A.   Yes.

''(4) Did plaintiff know before he started upon the trip upon which he was injured that the train No. 1 had entered the tunnel under the coke bins?   A.   Yes.        .

''(5) Could plaintiff have seen train No. 1 before coming in collision therewith, in time to avoid a collision, if he had looked for the same?   A.   Yes.

''(6) Were the lights in and about the vicinity of the tunnel at the time of the injury complained of insufficient to enable the plaintiff to see that train No. 1 was in the tunnel at the time plaintiff entered the tunnel?   A.   No.

''We, the jury in the above-entitled action, find for the defendant.''

Judgment for the defendant was entered by the court, and, from such judgment and an order denying a new trial, the plaintiff has appealed.

Appellant's first assignment of error is that the court was wrong in submitting the six special questions to the jury. It appears from the testimony of Elliott, Snow and Seidler that plaintiff was along in August, 1906, warned never to go upon a motor again or attempt to run one because he had had a serious accident while operating one and had caused considerable damage; the reason of the accident, according to the witnesses, being plaintiff's "reckless" running. Plaintiff denied that he received any such warnings or instructions. He testified that on the night of October 14th he was told by Krejci to run the motor. He demurred to this, saying he preferred to "chase" cars or do something else, but Krejci told him to either run the motor or go home. Krejci denied that any such conversation took place, and said that the first time he saw plaintiff that night he (plaintiff) was operating the motor. Krejci had no knowledge that plaintiff had been instructed not to run the motors.

It is the contention of the appellant that the first three special questions submitted were not within the issues. With this we agree, for the reasons hereafter to be pointed out. But the case was tried upon the theory that these questions were material, and we cannot see where plaintiff was prejudiced by the submission of the same to the jury. Plaintiff had the privilege of asking the court to also submit to the jury the question whether Krejci ordered him to run the motor. If these matters were material, it would have been proper, and perhaps advisable, to submit this special question also.

We cannot agree that there was any error in submitting interrogatories 4, 5 and 6 to the jury. Indeed, we think they were properly submitted, as taking the opinion of the jury upon the only issue in the case in the light of plaintiff's own testimony.

Again, it is urged that the evidence is insufficient to justify the verdict, in that "it conclusively shows that the plaintiff was of immature years, and lacked the experience, judgment and capacity to run the motor." We have carefully studied the testimony, and cannot agree with this. Our opinion is that the

general verdict is abundantly justified by the evidence, and that the last three special findings are amply supported.

But the appellant contends "the evidence conclusively shows that running a motor was outside of plaintiff's regular duties, and that defendant neglected to give him any instructions, caution or warning." This assignment of error relates, of course, to the general verdict. There is some testimony in the case to the effect that running a motor, when occasion required, was not outside of plaintiff's regular duties as car-chaser and wheeler. We cannot undertake to say that a negative finding on that question is not supported by substantial evidence. But what caution or warning did the plaintiff require? This question was fully considered in *Forquer* v. *Slater Brick Co., ante,* p. 426, 97 Pac. 843 (just decided). What is there said in regard to pleading fully applies to the case at bar, but we shall pass it, as counsel seem not to rely upon it. No warnings in regard to the motor were required by this plaintiff, for two reasons: (1) He knew all about the machine; and (2) he was not injured by reason of any patent or latent defect in the motor. The reason for warning a servant is either to impart to him knowledge that he does not possess, or to impress upon him the necessity of being careful and bearing in mind the danger. Regardless of whether Krejci instructed plaintiff to operate the motor on the night in question, the orders he received from Messrs. Elliott, Snow and Seidler were ample warning to him, not only of the danger of "reckless" running, but also any dangers connected with the machine itself. As a matter of fact, as we read the testimony, the jury would have been well justified in concluding that the plaintiff knew all about these motors and the method of operating them. Of course, it was not negligence *per se* to change this young man's occupation from that of wheeler or car-chaser to that of motorman. The allegation of the complaint that such change was made must be supplemented with testimony showing a necessity for additional instructions relating to the new employment.

The third particular in which the evidence is alleged to be insufficient to justify the verdict is this: "That it conclusively shows that defendant neglected to provide lights so as to enable plaintiff to see on the night in question, and thereby avoid injury." In our judgment there was sufficient evidence to justify finding No. 6.

Again it is said that "the evidence conclusively shows negligence on the part of the defendant in failing to make rules for the running of trains so as to avoid collisions." It is not suggested what rules should have been promulgated. On the other hand, there is testimony that no rules were necessary or desirable, because all the employees who had worked in the smelter any length of time understood how the trains were run, and these employees were of sufficient number to "keep track" of the trains. In the absence of testimony or suggestion on the subject we are unable to conceive what rule or regulation would have served to prevent this accident in the manner of its occurrence, as narrated by the plaintiff. The jury found that he knew the other train was in the tunnel. It seems that at one time a system of electric bells was in use at the smelter, but it appears from the testimony of the superintendent of the smelter that this system of bells had no connection with the movements of the trains, and was not designed to regulate them in any way—that it served an entirely different purpose, and had been discontinued. Indeed, as the plaintiff tells his story, the absence of rules had nothing to do with the accident.

In the case of *Wagner* v. *City of Portland*, 40 Or. 389, 67 Pac. 300, the supreme court of Oregon said: "The question whether the defendant was at fault in omitting to adopt suitable rules is not one for the jury, unless there is something in the testimony from which the inference may be drawn that it was practicable to have provided against the occurrence of the accident complained of by such a rule. * * * No such proof is to be found in the record, and hence a case has not been made in this particular upon which to put the question of negligence of the defendant in omitting the adoption and promulgation of

the rules insisted upon to the jury.'' (See, also, 1 Labatt on Master and Servant, sec. 211.) The author last cited says, at section 212 of his work, that one of the main purposes of a rule is to place servants in possession of certain information which they are not in a position to acquire by their own unaided observation. The plaintiff in this case is in the anomalous position of insisting that the defendant should have made a rule to guide him in doing work which, according to findings 1, 2 and 3, he was expressly forbidden to undertake.

The court gave to the jury instructions numbered 6, 9 and 20, as follows:

''(6) You are instructed that a minor, or person under twenty-one years of age, cannot be expected to set up his opinion against the judgment and experience of those maturer and older to whom he is given in charge, and that it would be his duty to obey the orders of those older than he and in authority over him. Therefore, if you are satisfied from the evidence in this case that the defendant's foreman, Milo Krejci, ordered the plaintiff to take and run the motor on the night in question, you are instructed that it was the duty of the plaintiff to obey such order, unless plaintiff, as hereinafter referred to, had been forbidden by the superior officers to run said motor, or unless the dangers, if any, were so obvious that a prudent person of plaintiff's age, experience and capacity, would know and appreciate the same.''

''(9) You are instructed that the defendant's duty to exercise reasonable or ordinary care in providing and maintaining a safe place where plaintiff should do his work would not be excused simply because plaintiff may have started to run the motor on the night in question without an express order to do so by some one in authority. The defendant would be responsible for failure on its part to provide and maintain a safe place in running said motor and train by the plaintiff, unless at the time of his injuries he was doing so without the knowledge and consent of the defendant, or its foreman in charge, or un-

less he had previously been ordered by his superiors, as herein-after you will be instructed, never to run any of said motors.''

"(20) You are instructed that if, before the day of the acci-dent complained of by the plaintiff, F. W. Snow, assistant superintendent of the reduction works of the defendant, or A. T. Elliott, the superintendent of the smelting department of de-fendant, gave the plaintiff orders never to go upon any of the blast furnace motors or attempt to run them or either of them, or that Henry Seidler, the acting assistant foreman of the smelter, gave plaintiff such orders as coming from A. T. Elliott, superintendent aforesaid, you should find for the defendant, even though you may believe the foreman, Krejci, ordered the plaintiff on the night he was injured to run the motor. It was in that event the duty of the plaintiff to have given said fore-man, Krejci, information of such prohibitory orders if said Krejci ordered him to take charge of said train, and failure to do so on the part of the plaintiff and going upon said motor in disobedience of such orders, if he did so, would make him a trespasser.''

So far as these instructions involve the idea that plaintiff could not recover, if he had been instructed not to run a motor by the general officers, even though Krejci ordered him to run one on the night in question, they are erroneous. Both Krejci and Seidler testified that, if the former ordered plaintiff onto the motor, it would be his duty to obey; so that, whatever the general rule of law may be where a servant is confronted with conflicting orders, it seems clear that in this case the court should not have advised the jury that plaintiff's duty was to obey Elliott, Snow and Seidler.

The trial court also gave the following instruction to the jury:

"(12) The plaintiff alleges in his complaint, among other things, that the defendant was guilty of negligence and want of ordinary or reasonable care in putting the plaintiff in a motor cab on said night that was made of inferior material and poorly built, and which had been badly smashed and damaged before the accident complained of, so that it afforded no protection

or safety to plaintiff in such an emergency, and which had been left in such shape as a result of previous collisions that plaintiff, while riding backward, with his hands on the controller and reverse lever, was unable to sit in a proper position so as to watch out for the train or any other obstruction, and there was also too little room in said cab to enable plaintiff to move or in anywise save himself in sudden danger. With reference to said allegations, the court instructs you that there is no evidence in this case which will entitle the plaintiff to recover upon these allegations or any of them, and you are instructed to wholly disregard all of the evidence with reference to such matters in arriving at your verdict."

Exception is taken to that part of the instruction directing the jury to disregard the evidence for all purposes. This exception is well taken. Plaintiff's proposed instruction No. 2 should have been given. The court should have withdrawn from the consideration of the jury the allegation that the defective cab was, independently, a proximate cause of the accident. As shown by plaintiff's testimony, no defect in the cab contributed to the cause of the injury. But the jury had the right to take into consideration all the attending facts and circumstances, including the manner of construction of the cab, the defects in the same, if any, in determining how the accident occurred and the responsibility therefor. (*Forquer* v. *Slater Brick Co., supra.*) We think, however, that the jury must have understood from other instructions that they were to do this; otherwise, they could not have answered interrogatories 5 and 6.

Instruction No. 15 is also objected to. It reads thus: "(15) The law requires the plaintiff to use his natural faculties. Whatever he might have seen or heard or discovered, exercising reasonable or ordinary care, he is supposed to have known. If he had an opportunity to ascertain whether train No. 1 was at the lime rock bins, and that, if he should run his train upon that track, he would come in collision with said train No. 1, his duty would not permit him to blindly proceed with his

train without making an investigation.  He was required to use his ordinary senses of hearing and sight in places of danger, and, if he failed to do so and was injured on account thereof, he cannot recover even though the defendant may have been negligent.  Neither can he recover if he received his injuries through his own recklessness, for under the law he was bound not to be reckless.  Neither can he recover if he received his injuries through forgetfulness or want of attention, for under the law he was bound not to forget, and was bound to be attentive.'' Without analyzing this instruction, it may be said that the rule laid down in *Forquer* v. *Slater Brick Co., supra,* is the one that should govern in cases like this, and, viewed in the light of that rule, the last instruction is probably technically incorrect.  The same observation may be made concerning instruction No. 16.

The plaintiff requested the court to give to the jury this instruction: ''No. 3. Even if you should find from the evidence that the defendant's foreman, Milo Krejci, did not in the first instance order or direct the plaintiff to take and run the motor, and even though it should appear to your satisfaction that the plaintiff took said motor voluntarily and without being directed to do so, yet if you should further find from the evidence that, before starting on his last trip, the defendant's said foreman knew that the plaintiff was about to take said trip as motorman, and that he consented to plaintiff's doing so, then the defendant's responsibility for any negligence in keeping the place safe and providing adequate lights would be the same as though its said foreman had first directed and ordered the plaintiff to take said motor.''  We can dispose of the case in discussion of this request.

Turning back to the complaint, we find that plaintiff has brought five charges against the defendant, viz: (1) Requiring him to perform a hazardous act outside the line of his employment, knowing that he was of immature years and lacked the experience and judgment necessary for the performance thereof; (2) failure to provide adequate lights; (3) supplying a defective cab; (4) failure to make rules; and (5) failure to instruct

and warn the plaintiff.  This is the complaint.  But the evidence tends to establish but one ground of negligence, to-wit, failure to provide proper lights.  Plaintiff testified: "It seemed to me that just as I got under the middle of No. 1 coke bin that the train struck, and after she struck I don't remember anything.  It was running at a pretty good speed, and hit pretty hard.  *  *  *  I was kind of watching the motor, and kind of looking behind me, too.  I don't just remember how I was.  My train was running pretty good speed.  I was sitting with my head turned slightly to the right; had one hand on the controller and the other on the reverse.  The controller was on the left side, and the reverse was on the right side.  As much as I ran the motor, I always hung onto the levers.  I couldn't see anything in under those coke bins.  There wasn't any lights there at all along the coke bins, or on that elevator on the side.  There were no lights between the arc light and the light off from the side of the lime rock bin.  I was kind of noticing to see if there was anything on the track.  I didn't expect to meet the train there because it had gone out twenty minutes or more, and by what experience I had it should have been pretty near going in on the furnace on the outside track. I couldn't see anything at all.  *  *  *  I couldn't see the car I struck on account of the lights.  I looked for it.  I tried to look out, but I couldn't.  There wasn't any lights in under the coke bins.  *  *  *  I was paying attention to where I was going.  I was watching the track and watching the motor so she wouldn't jump off, and trying to look ahead to see if there was anything on the track.  I did not see anything on the track.  I had to think of the train.  I don't remember just what I was thinking about the train.  The last thing I was thinking about was watching ahead on the track to see if there was anything in there."

It will be seen from the foregoing extract that the plaintiff attributed the accident solely to a failure on his part to see the train ahead of him on account of lack of light.  It is true he claims that he did not thoroughly understand the work of

running the motor, but he fails to tell how that contributed in any way to the collision. The jury found that the lights were not insufficient to enable him to see the other train, and that, if he had looked for it, he could have seen it. He was defeated, then, upon the only material issue he presented to the jury, assuming that he was rightfully on the motor. The special findings would control the general verdict in any event. (Revised Codes, sec. 6758.) And, if there were no general verdict, it would have been the duty of the court, in our opinion, to enter judgment for the defendant on special findings 4, 5 and 6.

Believing, as we do, that the plaintiff ought not to have had a verdict upon the case made, and that substantial justice has been done between the parties, we conclude that the order and judgment of the district court should be affirmed, notwithstanding those technical errors heretofore noticed.

*Affirmed.*

Mr. Justice Holloway concurs.

Mr. Chief Justice Brantly, being absent, takes no part in the foregoing decision.

Rehearing denied November 23, 1908.