THE HON. WILLIAM L. HOLLOWAY, } Associate Justices.
THE HON. HENRY J. SMITH,

HILL, RESPONDENT, v. NELSON COAL CO., APPELLANT.

(No. 2,711.)

(Submitted October 29, 1909. Decided November 12, 1909.)

[104 Pac. 876.]

*Personal Injuries—Coal Mines—Master and Servant—Rules— Failure to Promulgate—Contributory Negligence—Assumption of Risk—Vice-principal—Fellow-servants—Promise to Warn—District Judges—Disqualification—New Trial Order.*

District Judges—Disqualification—New Trial Order—Power of Substituted Judge.

1. Where a district judge, after trying a cause, deemed himself disqualified from acting upon a motion for a new trial, and called upon a judge of another district to sit in his place for that purpose, the latter had the same power in the premises as the judge who called him.

Personal Injuries—Master and Servant—Rules—Failure to Promulgate—Issues.

2. Where, in an action by a coal miner for injuries sustained in defendant company's mine, plaintiff's allegation, couched in general terms, that defendant was negligent in not providing rules governing the setting off of blasts, had not been assailed nor any objection made to the introduction of testimony, which had to do only with the ques-

Mont., Vol. 40—1          (1)

tion whether any rules at all were in force, and not with the nature and scope of any particular rules which should have been promulgated, defendant could not complain that the issue was submitted to the jury.

Same—Foreman—Failure to Warn Servant—Assumption of Risk—Rules.
3.   Plaintiff who, while working in a coal mine, heard blasts going off in an adjoining room so close to where he was employed that he became apprehensive of his safety and informed the general foreman in charge of the mine, but was assured by him that there was no danger and that he (the foreman) would warn him before any shots were fired, and who, without such warning, was seriously injured by a subsequent blast, cannot be held to have known, appreciated and assumed the risk incident to working without rules regulating the setting off of blasts.

Same—Contributory Negligence—Question for Jury.
4.   The question whether plaintiff, in remaining at work after becoming aware that shots were being fired in close proximity to him, knew and appreciated the danger of his position at the time he was injured, and therefore was guilty of contributory negligence or assumed the risk, in view of the surrounding facts and circumstances, was for the jury to determine.

Same—Vice-principal—Fellow-servants.
5.   Defendant company's foreman, who had general supervision over its mine and plenary authority to hire and discharge employees, was a vice-principal and not a fellow-servant of plaintiff.

Same—Failure to Warn—Vice-principal—Power to Bind Principal.
6.   *Held,* that a general foreman, who was in full charge and control of defendant company's coal mining operations, had authority to induce plaintiff to continue at work in a room in the mine which had become dangerous by reason of blasting in an adjoining room (with knowledge of which the foreman was chargeable), by a promise that he would notify him (plaintiff) in time to avoid any danger from subsequent blasts; and that in so promising he represented the defendant as its vice-principal, and made it liable for injuries resulting from his failure to keep such promise.

*Appeal from District Court, Cascade County; J. E. Erickson, Judge of the Eleventh Judicial District, presiding.*

ACTION by John Hill against the Nelson Coal Company. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals.   Affirmed.

*Mr. Ransom Cooper, Mr. Wm. G. Downing,* and *Mr. Sam Stephenson,* submitted a brief in behalf of Appellant; *Mr. Stephenson* argued the cause orally.

There is a total absence of testimony as to what rule could have been adopted to prevent the accident, and no one has undertaken to testify to any rules in force in other mines that were

not in force in this mine. The case falls directly within the doctrine announced in *Mitchell* v. *Boston & M. Con. etc. Min. Co.*, 37 Mont. 575, 584, 97 Pac. 1033; see, also, *Shaw* v. *New Year Gold Mines Co.*, 31 Mont. 153, 77 Pac. 515; *Johnson* v. *Portland Stone Co.*, 40 Or. 436, 67 Pac. 1013, 68 Pac. 425; *Berrigan* v. *New York etc. Ry. Co.*, 131 N. Y. 582, 30 N. E. 58; *Wagner* v. *City of Portland*, 40 Or. 389, 60 Pac. 985, 67 Pac. 300. And even if there were rules and regulations which defendant should have adopted that it did not adopt, and even if it were negligent in this regard, the plaintiff is in no position to complain. He was an experienced miner. He says he discovered the danger besetting him, and must be held, under the circumstances, to have assumed the risk by voluntarily continuing in defendant's employ without objection as he did. (*Cole* v. *Rome etc. Ry. Co.*, 72 Hun, 467, 25 N. Y. Supp. 276; *Olson* v. *St. Paul M. & M. Ry. Co.*, 38 Minn. 117, 35 N. W. 866; *Flynn* v. *Campbell et al.*, 160 Mass. 128, 35 N. E. 453.)

The duty which it is claimed the foreman undertook by promising to give warning of the firing of the blasts was not in any sense the master's duty; such duty was essentially that of a servant. Accordingly, when the foreman undertook to give warning of the firing of blasts, if he did so, he undertook to abandon the performance of the master's duties and to take upon himself the performance of the servant's. When he does or undertakes the latter, he thereby becomes a fellow-servant, and cannot bind his principal by any such unauthorized act; for it must be considered that the master employed the foreman to discharge the duties of foreman and not to discharge the duties of a servant. (See *McLaine* v. *Head & Dowst*, 71 N. H. 294, 93 Am. St. Rep. 522, 52 Atl. 545, 58 L. R. A. 462; *Bradley* v. *Railroad Co.*, 62 N. Y. 99; Thompson on Negligence, sec. 4939; *Eureka Co.* v. *Bass*, 81 Ala. 200, 60 Am. Rep. 152, 8 South. 216.)

For Respondent there was a brief by *Mr. A. C. Gormley*, and *Mr. W. F. O'Leary*, and oral argument by *Mr. O'Leary*.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an action brought to recover damages on account of personal injuries received by the plaintiff while in the employ of the defendant as a miner at its coal mine in the vicinity of Sand Coulee, Montana. It appears from the evidence: That plaintiff was working as a pick miner in one of several long parallel rooms of the mine; that the room in which he was had been advanced a considerable distance farther than the adjoining room; that a wall of coal about fifteen feet wide was left between the rooms, and, in order to properly ventilate the mine, it was necessary to cut passages through this wall from one room to the other. One such passage had been cut, and, about fifty feet in advance of this passage, another had been driven into the wall of the room in which plaintiff was engaged, in order to connect with the adjoining room, when the latter had been advanced sufficiently to meet it; but at the time plaintiff went to work a few days before he was injured the operations in the adjoining room had not reached that point, and consequently this latter was called the blind passage or cross-cut. Subsequently the miners in the adjoining room reached a point opposite this so-called blind cross-cut, and in blasting, in the course of their work, drove through into the same, thereby severely and permanently injuring the plaintiff. There was some conflict in the testimony as to where plaintiff was at the time of his injury. He testified that he was standing alongside of his car shoveling coal, and was three feet beyond the blind cross-cut, toward the face of the room. The defendant sought to prove that he was in the blind cross-cut.

The complaint, after setting forth that it was the duty of the defendant to use ordinary care to provide and maintain for plaintiff a reasonably safe place in which to perform his work, alleges, *inter alia:* "The plaintiff should have been notified before any blasting was done in said adjacent room, and thereby have enabled him to secure a place of safety and protect himself from danger; that defendant's foreman, Jack Pearce, promised to notify plaintiff before any blasting, but

defendant failed to notify plaintiff of the same after having promised to do so, and failed to make or promulgate any rules or regulations for the protection of the plaintiff from the danger of such blasting.'' The defendant pleaded sole negligence, contributory negligence, and assumption of risk on plaintiff's part, and also that plaintiff's injury was occasioned and contributed to by the negligence of a fellow-servant. The trial resulted in a general verdict in favor of the plaintiff, and the following special findings:

''Interrogatory No. 1. Was plaintiff in the cross-cut at the time the blast which injured him went off? Answer: No.

''Interrogatory No. 2. Did Jack Pearce, at any time before plaintiff was injured, promise plaintiff that he, Pearce, would notify plaintiff before blasting was done by the miners working in the adjoining room? Answer: Yes.

''Interrogatory No. 3. Did the defendant, at the time plaintiff was injured, have in existence rules regulating the time when blasting should be done in its mine by the pick miners? Answer: No.''

After judgment entered upon the verdict, defendant moved for a new trial. This motion coming on regularly to be heard, the Honorable J. B. Leslie, judge of the eighth judicial district, before whom the cause was tried, announced that he deemed himself disqualified to hear it, and therefore, over defendant's objection, called in the Honorable John E. Erickson, judge of the eleventh judicial district, who overruled the same. From the judgment and the order denying a new trial, appeals are perfected.

1. We think there is no merit in defendant's contention that the action of Judge Leslie in calling in Judge Erickson was error. In this state a party has no absolute right to have his motion for a new trial passed upon by the judge who tried the cause. (*State ex rel. Carleton* v. *District Court*, 33 Mont. 138, 82 Pac. 789.) And the judge called in has the same power in court or chambers as the judge who called him. (*Farleigh* v. *Kelly*, 24 Mont. 369, 62 Pac. 495.) We have no doubt

that this power includes the right to pass upon a motion for a new trial. It is the duty of a judge to perform his official functions regardless of his personal feelings or sentiments, and no judge should refuse to act unless he is in fact disqualified; but, Judge Leslie having held that he was disqualified, we shall assume that he became so pending the motion for a new trial. There are certain contingencies, which, when they exist or arise, disqualify a judge, *ipso facto,* from sitting or acting in any action or proceeding. (Rev. Codes, sec. 6315.)

2. Plaintiff testified that the defendant had no rules regulating the time when pick miners should blast, and that these miners fired shots whenever they needed coal. The testimony on the part of the defense tended to show that the rule of the company was that shots should be fired twice a day, to-wit, at the noon hour and at quitting time; but there were, in fact, frequent infractions of this rule, which those in charge of the mine attempted to correct. Pearce, the superintendent, testified: "They would only shoot, to my knowledge, at other times in case there was a miss-shot, or a shot didn't throw any coal." Mr. Nelson, the vice-president and general manager of the defendant company, testified: "We authorized Mr. Pearce to make a rule permitting the pick miners to shoot twice a day, at noon and at quitting time. The objection to the pick miners firing whenever they want to is that it would make so much smoke in the room that we would always have the main entrance full of gas and smoke, and that would not only interfere with the men, but with the mules and horses."

Appellant contends that the case should not have been, as in fact it was, submitted to the jury "upon the proposition that defendant failed to make and promulgate rules or regulations for the protection of the plaintiff from the danger of blasting"; and it is argued in the brief: "There is no suggestion of what rule could have been adopted that was not adopted that would have resulted in preventing this accident. No one had undertaken to testify of any rules in force in other mines that were not in force in this mine." The case of *Mitchell* v.

*Boston & Mont. Con. C. & S. Min. Co.*, 37 Mont. 575, 97 Pac. 1033, is relied on to support this contention. In that case it was held, in effect, that, where plaintiff failed to introduce testimony as to what rules should have been promulgated by the defendant company, he could not rely for recovery on an allegation of negligence in that regard. Here the allegation in the complaint regarding the absence of rules is very general, but there was no objection to the pleading on that account, and the testimony relating to rules, the substance of which has just been recited, was introduced without objection. There was no question as to the nature or scope of the rules which plaintiff contended should have been made and promulgated. The only issue on that subject was whether or not any such rules were in force. Defendant contended and sought to prove the affirmative, and the plaintiff assumed the negative side of the question. The jury answered in favor of the plaintiff.

3. But it is urged plaintiff was an experienced miner, who fully understood and appreciated the danger of working without rules, if there were none, and therefore he assumed the risk. We cannot agree with this. And here it may be remarked that the record seems to disclose that plaintiff and many of his witnesses were ignorant foreigners, little able to express themselves in the English language, some of them testifying through an interpreter. He testified, in substance, that he had never been in the adjoining room, and did not know exactly where the blasting was being done; that he could not tell how close the men in that room were to the blind cross-cut. "The foreman tell that he measure it, and I didn't measure it. I didn't know what day those men would get to the blind cross-cut. I had no way of telling. When Jack Pearce promised to notify me before they blasted, I believed him and depended upon him. I was hurt on November 26. On the 25th Jack Pearce came in where I was working. I says: 'Jack Pearce, I am afraid to stay here. I heard yesterday and it sounded pretty hard. He been pretty close to the cross-cut.' Pearce said: 'Don't be afraid, John. I will take the chances. Be-

fore them fellows blast, I will come and tell you.' On the
24th I heard them blasting pretty hard in there. I hear them
blast once after Jack Pearce told me that. That was on the
same day I was hurt, between 10 and 11 o'clock. I was in
the entry of my room, waiting for drivers. Jack Pearce did
not come and tell me anything about them blasting then. I
didn't see him after I had the conversation with him on the
25th. I knew when they came to the closed cross-cut they
would shoot through there." On cross-examination the plain-
tiff was asked: "Didn't you think it was strange that Jack
Pearce didn't come and tell you?" His answer was: "Well,
what I hear and another gang was working another way, and
I believe he gave orders what worked on mine side on No. 5,
same side my room be, I thought he give orders to them fel-
lows to come and see and look at it when they blast, and he
would come and tell me, and another gang was there to blast
there then." Under the circumstances disclosed by this tes-
timony, we are of opinion that the plaintiff cannot be held to
have known, appreciated, and assumed the risk incident to the
situation in which he found himself, if Pearce was authorized
to bind the defendant company by the assurances given to
him. This latter question we shall hereafter determine.

But it is contended that plaintiff had no right to rely upon
Pearce's promise for so long a time without investigation. The
jury, however, may have been of opinion from his testimony
that he believed some of the blasts were being fired on the
opposite side of the adjoining room; that the only blast he
heard after his conversation with Pearce was when he was in
the entry, over one hundred feet away from the entrance to
the blind cross-cut; and that Pearce's statement to him justi-
fied him in believing that he would be notified of any blasts
which were to be fired close enough to the blind cross-cut to
render his position in the other room a dangerous one.

4. Again, it is contended that the circumstances detailed by
the plaintiff show contributory negligence on his part. But we
think it was for the jury to determine whether, in view of all

those surrounding facts and circumstances, he knew and appreciated the danger of his position at the time he was injured, and was guilty of contributory negligence or assumed the risk. (*Stephens* v. *Elliott*, 36 Mont. 92, 92 Pac. 45; *Forquer* v. *Slater Brick Co.*, 37 Mont. 426, 97 Pac. 843; *Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29; *Hollingsworth* v. *Davis-Daly Estates C. Co.*, 38 Mont. 143, 99 Pac. 142.)

5. It will readily be seen that the most important question involved in the appeal is whether the defendant was bound by the actions and promises of Pearce, and, if so, to what extent. Pearce himself testified: "I had general supervision of the workings there, and on one shift I was out giving directions and seeing about everything, and on the other shift I had a foreman. I gave the orders, and I hired John Hill, and put him to work. I showed him room No. 2 (6), and told him to go to work there." Under these circumstances, we have no doubt that Pearce was the vice-principal of the defendant corporation. (See *Kelley* v. *Fourth of July Min. Co.*, 16 Mont. 484, 41 Pac. 273; *Allen* v. *Bell*, 32 Mont. 69, 79 Pac. 582.) But the appellant in this connection urges this proposition upon us: That, notwithstanding he was a vice-principal, in undertaking to warn the plaintiff, he acted simply as a fellow-servant. In the case of *McLaine* v. *Head & Dowst Co.*, 71 N. H. 294, 93 Am. St. Rep. 522, 52 Atl. 545, 58 L. R. A. 462, cited by the appellant, the facts were these: Plaintiff was employed by the defendant company as a laborer, leveling and tamping the earth in a trench. The earth was dumped into the trench by car-loads, and the practice was for the boss of the gang to warn the men in the trench when a load was to be dumped. This boss or foreman was in charge of the whole gang of teamsters and laborers who were employed in filling the trench, and plaintiff had known him as a foreman all summer. When the plaintiff was set to work, the foreman said: "You go down to work there. I will take care of you fellows." The foreman did thereafter give the warning both before and after the accident. At the time of the accident, however, no warning was given, and in consequence of the omission

plaintiff failed to notice the falling load of earth and stones, and was injured thereby. Plaintiff could not see the load from the trench where he was working, and relied upon the warning. At the trial a nonsuit was ordered, and this order was affirmed on appeal. The court held that the place was not a permanent location prepared by the master for the work, but was made and changed by the work the servants were doing, and that it was not the duty as to the place itself that was in question, but the question was as to the extent of the duty of the master to guard the servants from dangers arising in the course of the work from the work itself. In this regard, the case probably differs from the one at bar. But the New Hampshire court appears, also, to hold that, as the only duty devolving upon the defendant, if any duty at all rested upon it, was to use reasonable care to select some competent person to give warning, if warning was necessary, and the selection having been made, to-wit, the foreman, acting for the company, having selected himself, a competent person, in this latter capacity he was a fellow-servant, and not a vice-principal, and the company was not responsible for his failure to give warning. There is a very able and exhaustive dissenting opinion by Mr. Justice Remick. Without attempting further to distinguish the New Hampshire case, and without other comment thereon, save to say that it appears to be an extreme case, we shall proceed to give our views in relation to the effect of the testimony in this case.

Room No. 6, where plaintiff was engaged, was in itself in no sense unsafe. But the defendant was engaged in operations in the adjoining room of a nature which placed the plaintiff in a situation where he apprehended an approaching danger, and such danger was, in fact, approaching and becoming more imminent each day. Upon being visited by Pearce, the man who had full control of the mine, with all the actual and incidental power and authority necessary to successfully operate the same, the man who hired him, directed him what work to perform, and where to perform it, and who had the power to discharge him if he refused to work in the place designated, he, in effect, said: "I

am afraid to longer work here. The blasting in the next room is becoming louder, and I fear a shot will break through the blind cross-cut and injure me.'' At this time plaintiff had no knowledge of physical conditions in the adjoining room, and did not know how soon the workmen there would reach the end of the cross-cut. Pearce, representing the company, was chargeable with the knowledge, and did in fact know, how far the work in the adjoining room had advanced, and how long it would take to reach a given point. The work in that room was a part of the general operations of the mine, of which he had full charge, with plenary authority to direct the employees and prosecute the work of extracting coal. He informed the plaintiff that he need have no fear; that he would notify him in time so that he might take a place of safety before the blind cross-cut was blasted through. This is the only reasonable interpretation of his words, and we think plaintiff had the undoubted right to so construe them and to rely upon them. Pearce neglected to keep his promise, and as a direct consequence thereof plaintiff was severely injured. Plaintiff was also engaged in the necessary work of mining coal, and Pearce induced him, by his promise, to continue in that work. It was a part of Pearce's duty to hire men for the purpose of operating the mine, and we have no doubt that as an incident to that duty he had authority to induce them to continue at work by any reasonable promise which he might make, and that in so promising he represented the defendant company and bound it. He was in no sense a fellow-servant of the plaintiff in so doing.

We think the case of *Bradley* v. *New York Central R. Co.*, 62 N. Y. 99, is in point. In that case it appeared that the defendant's foreman or trackmaster induced the plaintiff to engage in the work of clearing snow from the defendant's railway tracks during a heavy snowstorm, by promising, in addition to money compensation, that he, the foreman, would notify plaintiff of the approach of any train, the latter being a farmer and ignorant of the time at which trains would pass. The foreman neglected to notify the plaintiff, and he was injured. Mr. Justice Folger,

writing the opinion of the court, said: "As the necessity for the work to be done existed, as it was a work which it was the duty of the foreman to have done, as the plaintiff was the only one whom he could procure to do it, it seems that it was an incident to his duty to have the work done and to his general authority to use the necessary and proper means therefor to make the agreement with the plaintiff, not only for the compensation for his labor, but for his protection from danger. It is quite apparent from the facts  *  *  *  that there was need for being on the lookout for coming trains, and that the care of being on the lookout would interfere with the steady and constant progress of the work undertaken. It was not unreasonable, then, for the foreman to take upon himself the duty of warning the plaintiff of the coming of the trains, for which from his experience upon the track and his knowledge of the time-table, and of all the usual signs of approach and passage of trains, he was much the better fitted; nor was it unreasonable for the plaintiff to rely upon the greater knowledge and judgment of the foreman in this respect, and upon his present ability to do it, by reason of his freedom from other occupation. It seems to me that the engagement of the foreman with the plaintiff was, from the necessity for it and from its reasonableness, one which was within the scope of his general authority, as a natural means of fulfilling the important duty with which he was charged. As the engagement was binding upon the defendant, I think that the plaintiff had a right to rely upon it, and that he was not required by his duty to the defendant to be on the lookout for the coming of their trains.  *  *  *  He had engaged with the defendant for another to look and listen for him, who was better fitted for the task, and he had a right to go on without apprehension with the labor he had bargained to do."

In the case of *Kelley* v. *Fourth of July Min. Co., supra,* it appeared, among other things, that a stull was placed in a mine, under direction of the foreman. After it was put in the foreman examined it. Before putting in the stull, the dirt and sand were dropping from the roof. Plaintiff called the attention of the

foreman to this, and asked that it be timbered. He asked the foreman if it was safe, and the foreman replied that it "was perfectly safe, and when it needed timbering he would attend to it." Plaintiff took his assurance, and had no apprehension of danger whatever. Plaintiff was injured by the falling of the roof. This court said: "Plaintiff was employed * * * in running a tunnel in defendant's mine. He was doing this work under the immediate supervision and direction of John Sheehan, the foreman and manager of the mine. * * * Plaintiff was not engaged in creating a place, on his own judgment, and at his own risk. He assumed the risks naturally attendant upon driving the tunnel. It was the duty of defendant to keep that part of the tunnel or place already created safe by whatever reasonable means were necessary. * * * Plaintiff did not assume the risk of defendant's failure to keep that part of the tunnel or place already created reasonably safe and secure. * * * He did not * * * assume the risk of the failure of the defendant to take such reasonable precautions as were requisite to prevent the caving and falling of the roof of that part of the tunnel already created upon him while engaged in his work. * * * We think it clearly appears that Sheehan was the vice-principal of the defendant corporation. He employed and discharged the employees. He supplied the mine with materials and implements for its development. He had full control of the property, the employees, tools, materials, and complete charge of the management and development of the mine."

In the case of *Allen* v. *Bell, supra,* this court said: "One Blair was in the immediate charge of the mine, and plaintiff was a miner working at the bottom of the shaft when a blast was exploded, causing the injury complained of. * * * Upon the facts there is no doubt that Blair was a vice-principal. * * * A master is not justified in neglecting to give information known to him, or with the knowledge of which he is charged, regarding concealed danger. Much less (is he justified) in giving false information regarding any danger. When Blair ordered Allen to depart from the custom of searching for and blasting missed

holes and directed him to leave the missed hole, and said that he
(Blair) would see that it was set off when the next round was
blasted, he took upon himself the duty of seeing that this was
done, for he knew that Allen relied upon that statement.
*   *   *   Under those facts, Allen was not negligent in relying
upon the information given him by Blair, nor did he violate any
duty or subject himself to the charge of carelessness by obey-
ing the orders of his superior.''

While these two Montana cases are not directly in point on
the last question raised by the appellant, they serve to show that
a principal has been held bound by the reasonable promises and
assurances of his agent made in the course of the general carry-
ing out of a plan of operations of which the latter is in full
charge and control.

The case of *Westville Coal Co.* v. *Schwartz,* 177 Ill. 272, 52
N. E. 276, seems to bear upon the question we are considering.
It appeared in that case that Schwartz was running an electric
coal-cutting machine in the defendant's mine.   It was his duty
to see that the vibrations of the machine did not cause the roof
of the mine to become loose and dangerous.   On the night of his
injury he was attempting to make a record run with the ma-
chine, and the foreman, in view of that fact, told him he need
not look after the roof, but that he, the foreman, would do so.
Plaintiff was injured by a rock which was jarred from the roof
by the machine.   The court said: ''There is no dispute   *   *   *
that, in the absence of the alleged agreement by the foreman,
the duty which was neglected on this occasion was the duty of
the plaintiff himself, and not of his employer, the defendant.
On the other hand, it was within the scope of the foreman's au-
thority to assume, on behalf of defendant, for that occasion, the
duty of looking after the roof while the men gave their undivided
attention to making the highest possible speed with the machine.''
This may also be an extreme case.

The report of the case of *Morbach* v. *Home Min. Co.,* 53 Kan.
731, 37 Pac. 122, shows that the plaintiff, who had no knowl-
edge of the condition of a shaft in a coal mine in which he was

directed to work, asked the superintendent what its condition was. The latter replied: "It is all right, nice and safe." The court said: "The injury was caused by the fault or negligence of the superintendent of the mining company having charge of the coal shaft. Such officer or agent was the substitute for the master—the corporation. The company was liable for his acts or negligence." (See, also, *Taylor* v. *Star Coal Co.*, 110 Iowa, 40, 81 N. W. 249.)

Perhaps the soundest reason for the result reached in this case is to be predicated upon the proposition that the defendant failed to exercise ordinary care in furnishing to the plaintiff a reasonably safe place to work, regardless of any promise or assurance on the part of Pearce. If the testimony disclosed that plaintiff had no knowledge of the operations in the adjoining room, and the miners there had under defendant's direction, and under the physical conditions shown to have existed, so prosecuted the work as to break through the wall and injure him, he would undoubtedly have a cause of action. (*Kelley* v. *Cable Co.*, 7 Mont. 70, 14 Pac. 633; *Berg* v. *Boston & Mont. Con. C. & S. Min. Co.*, 12 Mont. 212, 29 Pac. 545.) The fact that he had some knowledge of conditions is pertinent only to the questions of contributory negligence and assumption of risk. Mr. Thompson, in his Commentaries on the Law of Negligence, section 4664, says: "It may be collected from the almost unanimous current of judicial authority that, if the servant complains of or directs attention to a defect or danger in the place where he is required to work, * * * and thereupon the master, or his representative, assures him that he can proceed without danger, and requests or commands him to continue his work, the servant will not as matter of law be put in the position of having accepted the risk or of having been guilty of contributory negligence because of relying upon the presumably superior knowledge of his master or of his master's representative, and continuing the work." Let us suppose that Pearce, instead of undertaking to notify plaintiff, had promised to have a bulkhead placed in the blind cross-cut before the miners in the adjoining room should

reach a point opposite thereto; and had failed to do so. We cannot doubt that in such event the plaintiff, relying upon the promise, in the light of the other testimony, would have made out a case sufficient to submit to a jury. The authorities are legion to support this view. (1 Labatt on Master and Servant, sec. 418, and note; 26 Cyc. 1209.) And we see no difference in principle between such case and the one at bar.

6. It is earnestly contended that the evidence is insufficient to sustain the verdict; that not only the evidence of the defendant's witnesses, but the physical conditions in the mine, show that plaintiff's statements as to how his injuries were received cannot be true. We have read the testimony, however, and conclude that the verdict and special findings are substantially supported. If the jury credited the plaintiff's testimony, as they evidently did, he was entitled to recover.

Some criticism is made of certain instructions, but we think the foregoing discussion disposes of all questions raised. We have not attempted to follow appellant's specifications of error or the order of counsel's argument, but, in the general consideration which we have given to the case, it is believed that we have disposed of every point raised by counsel.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.